Eran Industries v. Eran Industries Order 07-1087 Order 07-1087 Whenever you're ready, Mr. Hurd. Good morning, Your Honor, and may it please the Court. I would like to address three of the fundamental, and we believe interrelated, errors that the District Court made when it joined Eran Industries from making infringement allegations and telling its customers that it believed that products of its former employees not only infringe its patent rights, but also embody trade secret design. The first error we submit was the District Court did not require that the infringement allegations be objectively baseless. Secondly, the District Court shifted the burden of proof to Eran to show that the defenses to its own claims were substantially without merit. Third, we submit that the District Court erred when it found that the infringement allegations were made in disregard of the truth or falsity of the report of the infringement. Starting with the first one, we're back to objectively baseless as we were in the first case. But let me ask you a question. What's the current status of this case? The current status of the case is that the informal state has been lifted and the case is back on track and it's assigned to a new judge. Okay. So the preliminary injunction has been placed, but nothing's been scheduled. There's been no hearing on the merits. That's correct, Your Honor. But it's not officially stated. It's progressed now. It is, as of last week. Okay. Is it your view that, so going back to PRE and the other cases, that it was necessary for the judge to do a two-part analysis here, one with respect to subjective motivation and the other with respect to objectively baselessness? Yes, Your Honor, except it would not get to the second part of the test, the subjective test, unless it first found that the claims were objectively baseless, which the court did not. One of the odd things here, though, is that this is in the context of a preliminary injunction, and you keep saying in the brief they have to prove objectively. But in a preliminary injunction context, this criteria is just a likelihood of success. So you're not contending, are you, that they had to prove it was objectively baseless, right? They just have to, what, establish that there's a substantial likelihood that they could prove it wasn't objectively baseless? That's correct, Your Honor. The standard we believe, Your Honor, we submit is that GPI would have to show that the infringement claims at trial would be proven to be so baseless that no reasonable litigant could reasonably anticipate prevailing on those claims by a clear and convincing standard. But they have to show that there was a likelihood of success that they would prevail on that issue. They don't have to prove that they would have won. That would be the ultimate case, right? That's correct, Your Honor. Why isn't a conclusion by the district court that there's a substantial question of validity sufficient to establish a reasonable likelihood that the case at the end of the day would be objectively baseless? Because, Your Honor, the standard is that no reasonable litigant could realistically expect to succeed on the merits. And if the district court found that, as it did, the issue of validity was close, as well as the issue of infringement was close, then the court necessarily found that a reasonable litigant could realistically expect to succeed at the trial of this case. Well, it also found, though, that there was a substantial question of validity or of invalidity, right? That's correct, Your Honor. It's a semantic difference, but the court, at one point, said that the issues were close. At another point, it said that there was a substantial question. So let's assume, hypothetically, that the district court judge had not included those statements with respect to the closeness of the case, and that the only statement there was the statement with regard to substantial question of validity. Would that be sufficient? Well, we believe the court committed error when it made that finding, because it had shifted the burden of proof on that issue to Aaron. GPI should have had the burden of proving that it would likely succeed on its claims, and its claims were those of tortious interference, which brings in the PRE test. Do I misunderstand this case, or is it correct that the injunction is not against continued infringement, but against sending future warning letters to potential customers? That's correct, Your Honor. Quite unusual. So there's a high standard of review here, abuse of discretion, and the case is being tried, so you're either going to win or you're going to lose on the merits. And, of course, you could sue further infringers during the course of litigation, couldn't you? That's correct, Your Honor. So how were you so terribly impeded by this unusual injunction against sending out further warning letters? The harm that it causes the patent owners, it's a small company, and it's facing competition now from its former employees who have the contacts with its distributor base. That distributor base, in fact, is defecting to those former employees because the former employees are able to offer a product that's less expensive. And by not being able to continue to respond to the assurances of non-infringement that the former employees provide to those— But you could sue. We could certainly sue. With limited resources, it would be difficult for Aaron— And what could, under the circumstances, a further letter is going to do? It allows Aaron to respond to the assurances that GPI is providing to these customers that the products don't infringe. It's also able to respond to inaccurate statements that GPI provides regarding the status of the litigation and findings of the court made in the preliminary injunction. Why is there a stay? You mentioned earlier that there was a stay. It was an informal stay, Your Honor. It was not a formal stay of proceedings. So the injunction would prevent your client from talking to any customer if the customer says, you know, what's going on? I may buy from your competitor. I'm going to cancel your order. And the patentee can't say anything, such as we're working it out in court, or we think they're wrong, or whatever it is. That is, it's very broadly stated, and I wasn't really sure what it prohibited. The cautious way to interpret such an order is not to do anything, but is that the sense of— How would one reply to such an inquiry from an ex-customer? By saying, I can't talk about it? I suppose that would be the prudent way to respond, Your Honor, because the injunction is very broadly worded. It simply says that Aaron is prohibited from making the allegations of the type that were sent in the two letters that were referenced in the court's order. And those two letters are simple notification letters that Aaron and his counsel believe the products infringe and embody a trade secret taken from Aaron. And to be able to have any sort of a dialogue with a customer, a prospective customer or a former customer, and not violate that broadly worded injunction would be very difficult. Yeah, it would be very difficult, and I'm just really thinking that it was before the district court that customers who had, if I can use the word defected to the competitor, were canceling those orders on being told that they were running a certain risk of being involved, of purchasing or infringing products. It does seem as if the trial judge was trying to balance various interests, which is why I thought that the focus on, in fact, the likelihood of success on the merits was what it should have turned on. But this goes farther. In fact, I agree, it's unusual. And at the same time, the trial judge has a good deal of discretion in trying to preserve commercial relationships. What's your interpretation of all this? Well, Your Honor, we feel that the district court clearly erred when it made its factual findings that the infringement allegations were made in disregard of the truth or the falsity of the purported infringement. The fact scenario, Your Honor, is that Aaron fired these individuals who later formed GPI. In January of last year, it found products that were being distributed by GPI in the marketplace in an attempt by GPI to solicit sales from Aaron's own distributors. Aaron then had its counsel send letters to those distributors in January of that same month. And those letters not only indicate that a sample of the product had been obtained, but that patent counsel had reviewed it and believed that it infringed and identified the patent. And then in March, GPI submitted to the court a generalized depiction of its product. And then in May, GPI, because it was still facing defections, sent a second letter. And the court made findings based on that fact pattern that Aaron had not obtained a product that was distributed by GPI. In fact, the record shows that Aaron had obtained the product. The court somewhat inconsistently said that there was no effort made by Aaron to determine whether that product became the commercial product. But again, that shifts the burden of proof to Aaron to demonstrate good faith. And GPI should have been assigned the burden of showing that there was some material difference between those two products. Well, they did say it slopes upward instead of downward. I mean, that may have made an impression on the court. That was an attempt to show that the product of GPI did not infringe the patent. But there was no showing that there was any difference between what Aaron based his infringement allegations on and the product that GPI ultimately marketed. OK, let's hear from the other side and we'll save you rebuttal time. Mr. Zenger? Good afternoon. I would like to answer a couple of the questions you asked Mr. Hurd, if I might, at the beginning because I think it's salient to the issues that we have here. First, with respect to the status of this case, a couple of things have happened that were not mentioned. The case was transferred to another judge. That second judge has now dismissed the RICO claims and dismissed the third-party distributors for lack of personal jurisdiction. So there's more going on in the case. A recent order just last week dismissed with prejudice the RICO claims, which were the content of the May 10th letter themselves, which further corroborates the baseless nature of those claims. And the court now has dismissed them on the merits. With respect to your question as to whether a substantial question is good enough, a substantial question is good enough for the very reasons you cited. This is a preliminary injunction hearing. Yeah, but I'm a little troubled because in your brief, I mean, in the blue brief, they cite the test of globetrotters and PRE about sort of a two-part test about objectively baseless, sham litigation being objectively baseless and its objective motivation. And it doesn't seem to me that you responded at all to that. I mean, do you disagree that a component is objectively baseless? Absolutely not. We believe objectively baseless is a component. But if you look at both the Golan case and the globetrotter case, they were both cases deciding the merits in summary judgment and entering a final judgment. So the standard was what is objectively baseless. But if you go back to the Mekong case in which both you and Judge Newman participated, there it said that in order to show objective baselessness, you can do it in a number of ways. You can make the showing that they are objectively baseless or that there's a disregard for the truth or falsity of the alleged infringement. And so it goes to the standard being objective baselessness, but you can show that according to the Mekong case by showing a disregard for the falsity or the truth of the allegation. And that's what the district court here did. The district court, we believe, chose the proper legal standard, stated it, and then applied it. There is nowhere in the district court's decision that it did anything other than follow the rationale of the Mekong case. The only statements that point me to another one, the only one I can find where they really are talking about the objectively baseless, the answer is it presents a close question. I think that is the other place, if you look at pages. But how is a finding or conclusion by the district court judge that the validity presents a close question consistent with at least even a substantial likelihood? Well, I think the court went further than just saying there's a close question. In addition, although the public interest favors enforcing a valid patent, there is a substantial question as to validity. So the court reached that conclusion that there was a question of substantial validity. But the injunction is you can't even talk about it. Really, it would be helpful if you would focus on that aspect and not doing a standard preliminary injunction analysis of likelihood of success or not success. You can't talk about it. That's not what the order says. The order says don't send letters that have the type of content as your January letter and your May 10, 1996 letter. I don't think it says don't send letters. It isn't limited to written communications, is it? What it says is ordered to refrain from communicating information such as that contained in the January 31 and May 10 correspondence, which the court called scurrilous. Frankly, scurrilous is a pretty strong word for letters which seem to be fairly standard. And the court didn't quite find bad faith. And as Judge Newman says, precluding someone from communicating information is a pretty strong injunction. Where were these letters scurrilous? The letters were scurrilous in the fact that they alleged all these RICO violations and criminal conduct were all we have here is a civil case dealing with patents and an assertion of a trade secret. The court went through that analysis and indicated the bases that it used in determining bad faith. I would like to answer your question as to what can they say there. The order says don't make communications such as those in the January 31 letter. What did the January 31 letter say? It said we believe that we've identified a product and we believe that it infringes. But what did the court find? The court, we asked the court, or we asked, excuse me, GPI asked Aaron to produce the prototype that they say was the basis of their January 31 letter so that we could analyze whether it was even close to the claims. They failed to produce it to us. They failed to produce it to the court. What does that have to do with saying that, are you saying that they can talk to the distributors and the customers as long as it's not in writing? No. Or what? They can't talk to the customers. What they need to say is this product and we've had that reviewed by counsel and it infringes claim 135 or whatever it is. But that isn't what they said. They said we found a prototype and we simply believe it infringes and beware because we may come after you. So you're saying that's not an injunction against telling a distributor that your product infringes? That's not really, maybe that's one reading or interpretation? Is that what the judge had in mind? No, I think what the judge said was don't make vague and unfounded statements. It doesn't say that. It says communicate information. Such as that in those letters. That letter says we think that you guys are infringing our patent. We think you've taken our trade secrets and says you can't communicate that information. I think they can communicate the information that's properly permitted under all of the tests and that is you've identified the device, you do the Juden type analysis, rely on competent counsel and then you can go out and say that leaf proof device infringes claims 135. Please stop. But that isn't what they did. They said they got a prototype and the judge said what did the prototype look like? And they couldn't answer. They didn't produce it. We don't even know to this day what the prototype was because they've never even shown it to us. And so the judge said wait a minute. How can you go out saying there's a device, never produce it to us, never come in here to the court to even show what it was to show what your basis was. And based on that the court found that there wasn't good faith exercise there in sending that January 31st letter because they didn't even produce it so that it could even be examined by anyone. And so I don't believe that the court's order prevents them from saying anything to customers. In fact, the law says that they can if they make a reasonable inquiry and that that's done before the letter. Wasn't there still some burden on you to prove that their allegation was objectively baseless? Absolutely. And whereas, I mean, it's not clear to me from the record that you met that burden or you recognized that there was a burden or that the district court put that burden on you. Well, the district court said, stated the standard from National Steel and Abbott Laboratories on page 7. And they said at the preliminary injunction phase, once the accused infringer has posed a substantial question of invalidity, the patentee must demonstrate that the invalidity defense lacks merit. And so what we did at the hearing, we presented our evidence of non-infringement. And the court even says on page 5 of both the opinion and the record, GPI has presented evidence that its products do not infringe the 891 patent as well as evidence relevant to a prior offense. Then the court went on to conclude that validity challenges during the preliminary hearing can be successful. That is, they may raise substantial questions of invalidity. And then they said the same is true with respect to both validity and infringement. But the problem, it seems to me, is really with the scope of what the trial judge was trying to achieve. Just reading it on its face, it says, knock it off, no conversations. It says information. It doesn't say what information.  Your Honor, the letters have a vagary and a nonspecificity to them that caused the court to analyze what did Aaron do before it wrote such a letter. So the trial judge then comes up with a vague, nonspecific injunction for the same reason? No, the judge made a finding of bad faith, a finding that on page 9 of the opinion and of the record. Under the circumstances, the district court finds that Aaron's accusations were made in disregard of the truth or falsity of the purported infringement. And that's the kind of factual finding in the circumstances that should be given deference by this court. We believe the court should look at whether the proper standard was applied. We believe it was in citing the Mekong case and others and then applying it. But in this case, the court made a specific finding. It went through what happened since our people were fired. Went through the supposed trade secrets. Looked at the circumstances in which documents were falsified. It's very unusual. You agree it's very unusual to say you can't tell anybody what's going on in court. It seems to me that all your client needs to do is tell the customers, never mind. We'll defend you. We'll indemnify you or whatever. Hold you harmless. And let's go about our business. But this is a nonspecific, broad statement against conversation telling people what's going on in the court. Let's accept that they went too far, as the trial judge found. As to this kind of remedy takes us into all sorts of areas beyond likelihood of success on the merits. Balance of harms. I would guess that the district court had a balance of harms concept in mind along the way. But the court didn't say that. The court said that when taking into consideration the public interest, it dealt with public interest. It dealt with irreparable harm. It dealt with the harm to Aaron on page 9 of the decision. I believe, Your Honor, it did. It balanced all of those harms. In the context, I don't believe that this injunction is to be read to say they can't talk to anybody. That's not what it says. It says don't make communications like your January 31st letter. What would they talk about if they talked to a distributor whose business they've lost? What do they say? I think they can go to that distributor and tell them the status of the litigation. Because that's not what's in the January 31st letter. The January 31st letter, they haven't even filed a suit. Our complaint has all these counts in it. Sure. And those are the counts. Until apparently last week, there was a RICO count. They were counts that are very serious. All of the counts are serious. A number of counts which have a kind of turpitude attached to them. It can't be that the reading of that letter is that there's no limit to what you can say? That's correct. But that's not what the January 31st letter said. Because by January 31st, notwithstanding all the noise that Aaron had made, they had never filed a lawsuit for patent infringement. They never even filed it until after GPI said, We're not going to stand around anymore. We're going to bring a DJ action. Then they bring their complaint. So the point is the January 31st letter didn't say what you just said. And I believe that they can say that. And they've been able to say that since the day this injunction order issued. The fact that they haven't is – I don't know why they haven't. But that's not what the January 31st letter said. But when the district court was drawing its balancing test, what it says is because an infringement suit has been filed, Aaron has no need to provide notice of infringement. What does that mean? I'm not sure, Your Honor. Maybe that just doesn't mean that they need to go out and tell people there's an infringement. Instead, they can just report that a case has been filed. It must mean that anyone's doing what the defendant is doing is on notice of a lawsuit. It could be. But I don't see any prohibition on them telling people there is a lawsuit pending. These are the issues that are at hand. And the status of it is public. Of course the status of it is public. The complaint can be read. Absolutely. The answer can be read. That's right. And you could give people copies of the complaint. Then there's nothing left in the injunction. Sure there is. The injunction said don't make statements about unsubstantiated prototypes that you haven't investigated or produced to this court and just go out in the marketplace and represent that they're infringing devices. That's what I believe this injunction should be read to say because that's what the January 31st letter said. And similarly, the May 10th letter, the court found there was little or no basis for their RICO claims. And that's now been substantiated by their dismissal with prejudice. So the vagaries of the letters, I think, are what prompted the court to say don't communicate things like in the January 31st letter which says we got a prototype. The district court said show me that the prototype is like the device that GPI is now commercializing. They were unable to do it. Unable. So our point is the court knew that the court identified the right legal standard and they used it. The court then did the balancing test with the equitable balancing test of the preliminary injunction and made findings. The court found that. Okay, we're out of time. I think we still have time, don't I? I haven't reserved any time for rebuttal. You are working on negative time. Oh, excuse me. I'm terribly sorry. Thank you very much. Appreciate it. That's why the numbers keep getting bigger. Sorry, I didn't notice the switch. It should have a minus sign there. It does not. Thank you, Mr. Zanger. Mr. Hurd. Your Honor, just one preliminary matter. Mr. Zanger informed the court that the RICO claims had been dismissed. They had been dismissed with respect to some of the defendants but not all of the defendants. Mr. Zanger again has argued, as he did in his brief, that the burden of proof should be on Aaron to prove his good faith. He alleges that Aaron did not produce the prototype that it based its original infringement allegations on. He points to nothing in the record to substantiate that allegation. He also fails to point out that when prototypes or actually product samples were produced in discovery to Aaron, Aaron had those analyzed by its technical expert, and that information is in the record as well, and the expert concluded that claim one of the patent was infringed by that commercial product. We also respectfully disagree with Mr. Zanger's discussion as to what the injunction prohibits. The injunction, as Judge Newman pointed out, is very broad and is not limited to saying we believe the prototype that we initially examined infringes the patent. We read the injunction as being much broader than that and prohibits any communication regarding the allegation of infringement because the allegation of infringement is what was in that January letter sent to the distributors of Aaron. So Aaron has been judicially silenced by this injunction and was not able to communicate with its distributors and former distributors regarding issues that are being litigated in the district court. Of course, those are publicly available. Publicly available, a distributor in New Jersey probably is not going to have the resources to find that information. Okay. All right. Thank you both. The case is taken under submission. The Honorable Court will be adjourned until tomorrow morning at 10 o'clock in the evening.